UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOB ROGERS,<br><br>                Plaintiff,<br><br>v.<br><br>ROBERT NELSON et al.,<br><br>                Defendants. | Case No.: 16cv955-L(RBB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

    Pending before the Court in this breach of fiduciary duty action is Defendants' motion to compel arbitration and stay this action. Plaintiff filed an opposition, and Defendants replied. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, Defendants' motion is granted.

    According to the allegations in the complaint, Plaintiff Bob Rogers is an entrepreneur who built and sold businesses. He is the trustee of the family trust established to invest the proceeds. Starting in 2007, the funds were managed by Defendant Robert Nelson, a Private Wealth Advisor at the Private Wealth Management division of Defendant Morgan Stanley Smith Barney LLC ("Morgan Stanley"). The trust funds were invested in traditional stocks, bonds and mutual funds.

    In March 2015, Plaintiff sold one of his companies and deposited the proceeds with Defendants on behalf of the trust. Shortly thereafter, without prior notice, without

disclosures regarding the nature of the investment and its associated fees and risk, and contrary to explicit instruction to not make investments without prior consent, on July 31, 2015, Defendants invested $ 1 million of trust funds in a Morgan Stanley hedge fund, which resulted in substantial tax liabilities and low returns for the trust, while generating disproportionately large fees and commissions for Defendants. When Plaintiff found out about the unauthorized investment, he requested immediate return of the funds, but was told he could not receive any funds until May 2016 at the earliest, that a full refund could not be obtained until 2017.

In his capacity as the trustee, Plaintiff filed this action in State Court alleging breach of fiduciary duty and other tort claims. Defendants removed the action to this Court. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

Defendants filed the pending motion to compel arbitration, arguing that Plaintiff agreed to arbitration when he signed various investment management and account agreements in March and June 2015. Plaintiff opposes, arguing that the documents he signed in March 2015 were not signed on behalf of the trust, and that the June 2015 documents, which were signed on behalf of the trust, did not include the arbitration clause, or alternatively, that the arbitration clause is unconscionable under California law.

Arbitration clauses are governed by the Federal Arbitration Act, 9 U.S.C. §1 *et seq.* ("FAA") and California contract law. "The FAA mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Kilgore v. KeyBank N.A.,* 718 F.3d 1052, 1058 (9th Cir. 2013) (emphasis in original), quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). "As federal substantive law, the FAA preempts contrary state law." *Mortensen v. Bresnan Comm'cns, LLC,* 722 F.3d 1151, 1158 (9th Cir. 2013). However, the FAA does not require enforcement of arbitration agreements that may be invalidated on "such grounds as exist at law or in equity for the revocation any contract." 9 U.S.C. §2. "This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability ... ." *AT&T Mobility LLC v.*

2

*Concepcion,* 563 U.S. 333, 339 (2011) (internal quotation marks and citation omitted). The burden of proving that the arbitration agreement cannot be enforced is on the party resisting arbitration. *Green Tree Fin. Corp. - Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

The Court first turns to Plaintiff's argument that he did not enter into an arbitration agreement. Plaintiff does not deny that in his individual capacity he signed the "Single Advisory Contract" with Morgan Stanley on March 14, 2015. (Defs' Ex. A at 12; *see* Decl. of Bob Rogers ("Rogers Decl.") at 2; Opp'n at 9-10.) Directly over his signature is a bolded paragraph stating,

> This Agreement contains a predispute arbitration clause (in Section 8 on page 9) under which you agree to arbitrate any disputes with us ... .

(Defs' Ex. A at 12.) The referenced arbitration clause, set out in bold print, provides in pertinent part:

> 8. Arbitration
>
> This Agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:
> - All parties to this Agreement are giving up their right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
> [¶] . . . You agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between you and MSSB and/or any of its present or former ... employees concerning or arising from (i) any account maintained with MSSB individually or jointly with others in any capacity; (ii) any transaction involving MSSB ... any you, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between you and us, and any duty arising from the business of MSSB or otherwise, shall be determined by arbitration ... .

(*Id.* at 9.)  At the end of the clause, a paragraph set out in all capital letters further states, "PLEASE NOTE THAT A COPY OF THIS ARBITRATION PROVISION IS CONTAINED IN EACH PROGRAM AGREEMENT ... ."  (*Id.* at 10.)

Plaintiff argues that the arbitration clause does not apply because he did not sign the agreement in his capacity as the trustee.  The arbitration clause provides that it applies to future disputes and future Morgan Stanley accounts Plaintiff opens in "any capacity." (*Id.* at 9.)  Plaintiff cites no authority and provides no argument to show why this unambiguous express contractual language should not apply.  (*See* Opp'n at 9-10.) Accordingly, the Court finds that the arbitration clause in the Single Advisory Contract dated March 14, 2015 (Defs' Ex. A at 9), applies to Plaintiff's pending action.

Alternatively, on June 26, 2015, in his capacity as the trustee, Plaintiff signed the Account Application and Client Agreement for Trust Accounts.  (Pl.'s Ex. B ("Application") at 7.)[1]  In a bolded and bordered paragraph immediately above his signature, the Application provides:

> Your Accounts at MSSB are governed by a predispute arbitration clause (starting on page 9, paragraph 15 of the attached Client Agreement).  You acknowledge that you have received a copy of the Client Agreement, including the predispute arbitration clause.

(*Id.*)  The referenced Client Agreement includes a nearly identical[2] arbitration clause as the Single Advisory Contract Plaintiff signed in March.  (Defs' Ex. C, Client Agreement at 9.)

---

[1]  The document is titled Account Application and Client Agreement for Trust Accounts, nevertheless, it consists of two separately paginated documents -- an 8-page application and a 10-page client agreement.  (Defs' Ex. C.)

[2]  Although the arbitration clauses referenced in this order are not identical, the minor differences are irrelevant to the issues presented.  (*See* Mot. at 4 & n.1; *id.* at 13 (highlighting differences).)

Plaintiff argues that the arbitration clause in the Client Agreement does not apply because he did not receive the Client Agreement. (Rogers Decl. at 3.) He does not explain why he acknowledged twice that he did. First, immediately following instructions, the Application states in pertinent part:

> Important Information about your Application
>
> To open and maintain your account(s), each Trustee must acknowledge receipt of and agree to the terms and conditions of the ... Client Agreement ... .

(Pl.'s Ex. B at 1.) Second, Plaintiff's signature on the Application appears immediately below a bolded and bordered paragraph acknowledging his receipt of the Client Agreement and pointing out the arbitration clause. The email accompanying the Application invited Plaintiff to contact Nelson if there were any questions. (Pl.'s Ex. A at 1.) Plaintiff does not contend he had any questions, that he contacted Rogers to deny his agreement to arbitration, or that he complained that the Client Agreement was missing. (*See* Rogers Decl. at 3; Pl.'s Ex. B, Plaintiff's June 26, 2015 email at 1.)

Finally, on July 30, 2015, Morgan Stanley sent a letter to Plaintiff in his capacity as the trustee. The letter stated in pertinent part:

> Re: Alternative Investments Advisory Account Confirmation
> PLEASE REVIEW
>
> We are pleased to welcome you to our Alternative Investments Advisory programs. ... [¶] Please take a moment to review the enclosed materials. If any information is inaccurate, please notify your Private Wealth Advisor. These documents are for your records - there is no need to sign or return them.

(Defs' Ex. D, cover letter at 1 (emphasis in original).) Plaintiff does not deny opening the alternative investments advisory account, or receiving the letter with its enclosed materials. (*See* Rogers Decl. at 2-3.) Enclosed with the letter was a Single Advisory

Contract, which contains the same arbitration clause[3] as the Single Advisory Contract from March, and the Client Agreement from June. (*Cf.* Defs' Ex. D, Single Advisory Contract at 13; Defs' Ex. C, Client Agreement at 9-10; & Defs' Ex. A at 9.) Plaintiff did not contact Nelson, as directed in the letter, to protest the arbitration clause included in the new Single Advisory Contract. (*See* Rogers Decl. at 2-3.)

Instead, Plaintiff argues he was overwhelmed by the quantity of the "boilerplate" paperwork associated with his accounts, he claims that the June email accompanying the Account Application and Client Agreement for Trust Accounts only pointed him to the signature page of the Application, and that he simply did not receive or notice any document with an arbitration clause. (Rogers Decl. at 2-3.) The argument implies that Plaintiff did not read the documents he received in connection with his accounts. This is not sufficient to avoid arbitration. Where a client similarly argued that he did not see the arbitration clause due to the large quantity of investment account boilerplate paperwork, the court rejected the argument, finding that "[r]easonable diligence requires the reading of a contract before signing it. A party cannot use his own lack of diligence to avoid an arbitration agreement." *Rowland v. PaineWebber Inc.,* 4 Cal. App. 4th 279, 286 (1992), disagreed with on other grounds by *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal.4th 394, 415-16 (1996).

For the foregoing reasons, the Court finds, alternatively, that the arbitration clauses contained in the Client Agreement, which was included with the Account Application and Client Agreement for Trust Accounts sent to Plaintiff on June 25, 2015 (Defs' Ex. C, Client Agreement at 9), and in the Single Advisory Contract sent to Plaintiff on July 30, 2015 (Defs' Ex. D, Single Advisory Contract at 13), apply to Plaintiff's pending action.[4]

---

[3] *See* footnote 2 above.

[4] Because the arbitration clause is set forth fully in both of these documents, the Court need not address Plaintiff's argument regarding incorporation by reference.

Plaintiff further contends that the arbitration clause should not be enforced because it is unconscionable under California law. To prevail, Plaintiff must show that the arbitration clause is both procedurally and substantively unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 99 (2000). The procedural element focuses on "oppression or surprise due to unequal bargaining power," and the substantive element focuses on "overly harsh and one-sided results." *Id*. A sliding scale is applied, so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to find it unenforceable and vice versa. *Id*.

Plaintiff first argues that the arbitration clause is procedurally unconscionable based on surprise. He maintains he was surprised when Defendants brought the arbitration clause to his attention, because it was buried in small print boilerplate and not delivered to him in his capacity as the trustee.

"Surprise is defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 579 (2008). As discussed above, the arbitration clause stood out in Defendants' documents with the use of bold print. In addition, the notice of arbitration clause, also in bold print, was set out immediately above Plaintiff's signature on the Single Advisory Contract he signed in March 2015 and Application he signed in June 2015. A notice that each program agreement contains a copy of the arbitration clause was set out in all capital letters at the end of the arbitration clause in the Single Advisory Contract from March 2015. Plaintiff's argument that he did not receive an agreement with the arbitration clause is rejected for the previously discussed reasons -- he had signed an agreement with the arbitration clause and a notice that the arbitration clause was included. Although he did not sign it in his capacity as the trustee, the arbitration clause unambiguously states that it applies to future accounts Plaintiff opens in any capacity. Subsequently, in his capacity as trustee, Plaintiff received two documents, each with a notice of arbitration clause. At least one of the documents was an agreement which included the entire arbitration clause.

Plaintiff was twice invited to contact Nelson with questions or to point out any inaccuracies, but did not. Plaintiff's surprise argument is therefore unpersuasive.

Procedural unconscionability can alternatively be based on a showing of oppression. *Lhotka v. Geographic Expeditions, Inc.,* 181 Cal. App. 4th 816, 821, 824 (2010). "Oppression arises from inequality in bargaining power that results in no real negotiation and an absence of meaningful choice." *Gatton,* 152 Cal. App. 4th at 821. This often takes the form of a contract of adhesion -- a standardized contract drafted by the party of superior bargaining strength and imposed on the other, without an opportunity to negotiate the terms. *See Shroyer v. New Cingular Wireless Servs., Inc.,* 498 F.3d 976, 981 (9th Cir. 2007); *see also Gatton*, 152 Cal. App. 3d 582 ("adhesion pertains to the oppression aspect of procedural unconscionability").

In furtherance of his argument, Plaintiff also contends he is a consumer. This is contrary to his allegations in the complaint and representations in his declaration. Plaintiff is a businessman, who "over the past 20 plus years ... start[ed], buil[t], and gr[e]w several successful businesses in California that employed many Californians" and "was able to create wealth for his family" through his efforts. (Compl. at 1-2.) He became a Morgan Stanley investor in 2007 -- several years before the June 2015 transaction which prompted this lawsuit. (*Id.* at 4; Rogers Decl. at 2.) In 2015, Plaintiff's investment with Morgan Stanley exceeded $ 1 million. (*See* Compl. at 5.) Plaintiff is therefore not merely a consumer, but a sophisticated investor.

Although Plaintiff is a sophisticated investor, Morgan Stanley, the drafter, had superior bargaining strength. Further, it appears that the terms of Plaintiff's agreements were not open to negotiation. In this regard, the arbitration clause is included in a contract of adhesion. "[A]bsent unusual circumstances, the use of a contract of adhesion establishes a minimal degree of procedural unconscionability ... ." *Gatton*, 152 Cal. App. 4th 585, 586 n.9. However, Plaintiff had other options than investing his wealth with Morgan Stanley. Although other market choices do not eliminate the oppression aspect of procedural unconscionability, they diminish it to some extent. *Id.* at 583. The Court

therefore finds that Plaintiff has shown a minimum amount of procedural unconscionability.

To avoid the arbitration clause, Plaintiff must also show substantive unconscionability. Substantive unconscionability focuses on whether the results of the contract term are overly harsh or one-sided. *Armendariz*, 24 Cal.4th at 114. Plaintiff complains that the arbitration clause forces him to litigate in an unknown forum potentially in an unknown location, under unknown rules and time limits, subject to "exorbitant" administrative fees, with only a limited right to discovery, and in front of arbitrators friendly to Morgan Stanley. (Opp'n at 15-16.)

Plaintiff's complaints are largely contradicted by the arbitration clause itself. (*See* Defs' Ex. A at 9.) For example, the majority of the panel cannot be composed of industry insiders. (*Id.* ("The panel of arbitrators may include a *minority* of arbitrators who were or are affiliated with the securities industry.") (Emphasis added).) Plaintiff chooses the arbitration forum from "any self-regulatory organization or exchange of which [Morgan Stanley] is a member." (*Id.*) Plaintiff therefore has a substantial say in the choice of the applicable rules, forum and location. For example, the rules and fees for arbitration before the Financial Industry Regulatory Authority ("FINRA") are posted on its website, www.finra.org. They provide, among other things, for "hearing location closest to the customer's residence at the time of the events giving rise to the dispute" (Defs' Ex. F (FINRA Rule 12213(a)(1)), discovery (www.finra.org/arbitration-and-mediation/ arbitration-rules (FINRA Rules 12505-12514), motion practice (*id.* Rules 12503-04), and other procedural matters (*see generally id.* Rules 12000-12905). FINRA conducts hearings in San Diego. (www.finra.org/arbitration-and-mediation/dispute-resolution-regional-offices-and-hearing-locations.) Contrary to Plaintiff's contention that the statute of limitations is unknown, the arbitration clause states that, "The statute of limitations ... shall be that which would be applied by the courts in the state where the [Morgan Stanley] office servicing your Account is located." (Defs' Ex. A at 9.)

Plaintiff expressly complains that arbitration will "limit Mr. Rogers's ability to engage in meaningful discovery." (Opp'n at 15.) If Plaintiff chooses arbitration with FINRA, its rules expressly provide for discovery. (www.finra.org/arbitration-and-mediation/arbitration-rules (FINRA Rules 12505-12514).) To the extent his contention is that discovery tends to be less extensive in arbitration than litigation, it is not an appropriate consideration. "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." *Concepcion*, 563 U.S. at 346 (internal quotation marks and citations omitted); *see also id.* at 345 & 349. "[A] court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable ... ." *Id.* at 341 (internal quotation marks and citation omitted). Limitation on the scope of discovery, which is inherent in the less formal and more expeditious nature of arbitration, is, without more, not a proper basis to refuse to enforcement. *See id.* at 341-42.

Finally, all terms of the arbitration clause apply equally to both parties. (*See* Defs' Ex. A at 9.) Accordingly, the arbitration clause is not substantively unconscionable. In the absence of a showing of substantive unconscionability, the arbitration clause is enforceable.

Defendants' motion to compel arbitration is granted. This action is stayed pending arbitration pursuant to 9 U.S.C. §3. The Clerk shall administratively close the case. The parties may reopen it by following the procedure set forth in the 9 U.S.C. §9 *et seq.*

**IT IS SO ORDERED.**

Dated: May 1, 2017

*[signature]*
Hon. M. James Lorenz
United States District Judge